1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    FAYE SMITH,                                   Case No.  25-cv-00719-HSG

8                    Plaintiff,                    **ORDER GRANTING DEFENDANTS'**
                                                   **MOTIONS TO DISMISS**
9            v.
                                                   Re: Dkt. Nos. 20, 22
10   WELLS FARGO BANK, N.A., et al.,

11                  Defendants.

12

13          Pending before the Court are Defendants Wells Fargo Bank's ("Wells Fargo") and

14   JPMorgan Chase Bank's ("Chase") motions to dismiss.  *See* Dkt. Nos. 20, 22.  The Court

15   **GRANTS** the motions.

16   **I.    REQUEST FOR JUDICIAL NOTICE**

17          Along with its motion to dismiss, Wells Fargo filed a request for judicial notice.  *See* Dkt.

18   No. 19.  Plaintiff did not respond to Wells Fargo's request. The Court grants in part and denies in

19   part the request.

20          **A.    Legal Standard**

21          As a general matter, district courts may not consider material outside the pleadings when

22   assessing the sufficiency of a complaint under Rule 12(b)(6).  *Lee v. City of Los Angeles*, 250 F.3d

23   668, 688 (9th Cir. 2001).  However, there are two exceptions to this rule: the incorporation-by-

24   reference doctrine and judicial notice under Federal Rule of Evidence 201.  *See Khoja v. Orexigen*

25   *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Both procedures permit district courts to

26   consider materials outside a complaint without converting a motion to dismiss into a summary

27   judgment.  *Id.*; *see Lee*, 250 F.3d at 688–89.

28          The incorporation by reference doctrine is a judicially created doctrine that allows a court

United States District Court
Northern District of California

to consider certain documents as though they were part of the complaint itself. *Khoja*, 899 F.3d at 1002. This is to prevent a plaintiff from cherry-picking certain portions of documents that support her claims, while omitting portions that weaken her claims. *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id.* However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id.* Under the incorporation-by-reference doctrine, a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). If these conditions are met, the court may treat such a document as part of the complaint and may assume the truth of the document's contents for purposes of a motion to dismiss under Rule 12(b)(6). *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1002.

Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In *Khoja*, the Ninth Circuit discussed the judicial notice rule and incorporation by reference doctrine, noting that a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has held that if a court takes judicial notice of a document, it must specify what facts it judicially notices from the document. *Id.* Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on

the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id.* at 999–1000.

**B.    Analysis**

Wells Fargo asks the Court to take judicial notice of five exhibits. *See* Dkt. No. 19. Plaintiff does not oppose this request.

Exhibit A is a notice of errata filed by Plaintiff in this matter before the case was removed to federal court. *See* Dkt. No. 19-1. Plaintiff's notice of errata contained a version of her complaint that reattached and corrected her exhibits. While Exhibits A and B to the complaint remain unchanged, Plaintiff corrected the remaining three exhibits, specifically: (1) Exhibit C to the complaint, a forged power of attorney; (2) Exhibit D to the complaint, a forged resignation of trustee; and (3) Exhibit E to the complaint, two police reports filed by Plaintiff.[1] It appears that when she originally filed her complaint, Plaintiff erroneously attached the power of attorney twice and did not attach the resignation of trustee or police reports at all. The notice of errata therefore corrected her complaint to properly attach a resignation of trustee and police report. The only change that the Court observes in the revised version of the forged power of attorney, meanwhile, is that the cover page of Plaintiff's family trust has been removed between pages six and seven of the nine-page power of attorney. *Compare* Dkt. No. 1-1 70–79, with Dkt. No. 19-1 at 63–71.[2]

This request for judicial notice strikes the Court as somewhat odd. On the one hand, generally courts may not consider matters outside the pleadings when assessing the sufficiency of Plaintiff's complaint. *Khoja*, 899 F.3d 988, 998 (9th Cir. 2018). Here, however, it was Plaintiff who originally referenced these exhibits throughout her complaint and incorporated them by reference into it. She sought to remedy errors in attaching those exhibits by filing a notice of errata. Under the incorporation-by-reference doctrine, courts "treat[] certain documents as though

---

[1] Plaintiff's notice of errata did not include exhibit cover sheets for the corrected exhibits. To the extent that Plaintiff amends her complaint, and that amended complaint includes any exhibits, the Court **DIRECTS** her to include such cover sheets to allow the Court to easily identify each exhibit.
[2] Unless otherwise noted, all page numbers referenced herein are to the ECF page number at the top of the page.

they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. Here, there can be no question that it was Plaintiff, not defendant Wells Fargo, who sought to bring these documents to the Contra Costa court's attention in the first place. This is therefore not a situation where Defendants have sought to create "a defense to the well-pled allegations in the complaint" to defeat otherwise cognizable claims. *Id.* Because, in her original complaint, Plaintiff incorporated by reference the exhibits attached in Exhibit A to the request for judicial notice, the Court incorporates by reference those exhibits only. The Court thus incorporates by reference the following pages and exhibits found within Exhibit A to Wells Fargo's request:

Dkt. No. 19-1 at 27–61: This is Exhibit A to Plaintiff's complaint, *i.e.*, the Robert and Faye Smith Family Trust.

Dkt. No. 19-1 at 62: This is Exhibit B to Plaintiff's complaint, *i.e.*. a copy of a check representing a $200,000.00 life insurance proceed that was made payable to Plaintiff.

Dkt. No. 19-1 at 63–71: This is Exhibit C to Plaintiff's complaint, *i.e.*, a copy of the power of attorney forged by her stepson.

Dkt. No. 19-1 at 72: This is Exhibit D to Plaintiff's complaint, *i.e.*, a copy of the Certification of Resignation of Trustee forged by her stepson.

Dkt. No. 19-1 at 73–81: This is Exhibit E to Plaintiff's complaint, *i.e.*, a copy of two police reports that Plaintiff filed after discovering her stepson's fraud.

Exhibits B through E to the request for judicial notice, meanwhile, are all documents filed in state court proceedings in Plaintiff's action against her stepson. *See* Dkt. Nos. 19-2, 19-3, 19-4, 19-5. A court "may take judicial notice of court filings" in other cases "[t]o determine what issues were actually litigated." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, "a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause before them." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). The Court therefore finds that Exhibits B through E are judicially noticeable for the existence of the allegations and issues litigated in these other suits.

United States District Court
Northern District of California

## II.    BACKGROUND

Plaintiff Faye Smith was a victim of a fraudulent scheme in which her own stepson and his wife stole hundreds of thousands of dollars of Plaintiff's and her late husband's savings. *See generally* Dkt. No. 1-1 ("Compl."). Plaintiff and her husband, Robert Smith Sr., held various checking and savings accounts with Defendants. *See id.* at ¶ 16. Plaintiff and Robert Sr. created a family trust (the "Trust"), naming themselves as Settlors and Co-Trustees, and after Robert Sr. passed away on October 20, 2019, Plaintiff became the Trust's sole Trustee and beneficiary. *See id.* at ¶¶ 14, 17. Shortly after Plaintiff fell gravely ill and required extensive medical care, her stepson Robert Jr. and his wife Camille moved in with her, "purportedly to provide care" during her time of need. *See id.* at ¶¶ 18, 20. Robert Jr. and Camille "instead embarked on an endeavor to take control of all Faye's finances in order to enrich themselves." *See id.* at ¶ 21.

To achieve this aim, Robert Jr. and Camille forged a power of attorney and certification of resignation as trustee, "purporting to appoint Robert Jr. as both Plaintiff's attorney in fact and as Trustee of the Trust." *See id.* at ¶ 24. On its face, the power of attorney bore the signatures of Plaintiff and a notary, along with the notary's certification and stamp. *See* Dkt. No. 19-1 at 63–71. In relevant part, the power of attorney authorized Robert Jr. to:

> 1. Open, maintain, or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.
>
> a. Conduct any business with any banking or financial institution with respect to any of my accounts, including but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements . . . money orders . . . and certificates or vouchers payable to me by any person, firm, corporation or political entity . . .
>
> c. Perform any necessary act to deposit, negotiate, sell or transfer any note, security or draft of the United States of America, including U.S. Treasury Securities . . .
>
> 10. To transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.
>
> 11. To utilize my assets . . . to fund a trust created by my Agent for my benefit or the benefit of my dependents, heirs or devisee . . . .

*Id.* at 64, 66.

Robert Jr. and Camille submitted the forged documents to Defendants, who accepted them

5

and granted Robert Jr. and Camille access to Plaintiff's accounts. *See* Compl. at ¶¶ 24, 26. Robert Jr. and Camille "proceeded to transfer funds out of Faye's accounts to pay for their own expenses, including vacations, credit card payments, transfers to their own investment accounts, and various other expenditures." *Id.* at ¶ 27; *see also id.* at ¶¶ 28, 31. To keep their actions secret, Robert Jr. and Camille had the banks forward any statements or correspondence to their home in Texas. *See id.* at ¶ 30. It was not until December 2021 that Plaintiff discovered Robert Jr.'s and Camille's fraud. *See id.* at ¶ 34. After filing a police report, Plaintiff "began contacting Defendants through in person visits to the Defendants' branch locations and via phone calls to the hotline identified by representatives of Defendants." *See id.* at ¶¶ 34, 35. Defendants "refused to investigate the fraud, return the funds wrongfully transferred . . . or even remove Robert Jr. and Camille from having authority to make withdrawals" from Plaintiff's accounts. *Id.* at ¶ 36. "As of late 2023," Chase and Wells Fargo "still had not revoked" Robert Jr.'s and Camille's access to Plaintiff's accounts. *Id.* at ¶ 37. Robert Jr.'s and Camille's "final unlawful withdrawal" took place on January 26, 2023, when they closed out the account at Wells Fargo. *See id.* at ¶ 37.

Plaintiff separately filed suit against Robert Jr. and Camille in Contra Costa Superior Court, Case No. C23-02240, where she was awarded a judgment of $908,194.37. *See id.* at ¶ 40; *see also* Dkt. Nos. 19-2, 19-3. Plaintiff brings ten claims against Defendants: (1) aiding and abetting breach of fiduciary duty; (2) constructive fraud; (3) financial abuse of an elder under the California Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"), Cal. Welf. & Inst. Code §§ 15600 *et seq*; (4) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; (7) conversion; (8) aiding and abetting conversion; (9) negligence; and (10) violations of California's Commercial Code § 11204.

## III.     LEGAL STANDARD

### C.     Rule 12(b)(7)

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). This rule is designed "to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the

impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991). Rule 19 requires a three-step inquiry: (1) determining whether the absent party is a "required party" and "must be joined" if feasible; (2) determining whether the "required party" can feasibly be joined; and (3) if the party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (quotations omitted); *see also Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

### D.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the

United States District Court
Northern District of California

1    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

2    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

3    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

4    fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

5    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

6    **IV.    DISCUSSION**

7        **A.    Rule 12(b)(7) Motion**

8        Wells Fargo argues that the case should be dismissed under Federal Rule of Civil

9    Procedure 12(b)(7) because Robert Jr. and Camille are necessary parties whose joinder to this

10   action is impossible.[3]  *See* Dkt. No. 20 at 20–23.

11       Under Rule 19, a party is required to be joined if feasible under two conditions.  First, a

12   party must be joined if "in that person's absence, the court cannot accord complete relief among

13   the existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Second, a party must be joined if "that person

14   claims an interest relating to the subject of the action and is so situated that disposing of the action

15   in the person's absence may: (i) as a practical matter impair or impede the person's ability to

16   protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double,

17   multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P.

18   19(a)(1)(B).

19       Wells Fargo argues that, under the first condition in Rule 19(a)(1)(A), the Court is not able

20   to afford complete relief among the parties.  At bottom, Wells Fargo's position is that Robert Jr.

21   and Camille were already found "fully liable for all Plaintiff's losses," and the Contra Costa

22   Superior Court did not have the opportunity to consider potential joint and several liability or to

23   apportion relief among all potential defendants.  *See* Dkt. No. 20 at 20.  Complete relief cannot be

24   granted, in Wells Fargo's view, because Wells Fargo's liability, if any, may be borne by absent

25   parties, *i.e.*, Robert Jr. and Camille.  Plaintiff counters that the absent parties are not necessary,

26   erroneously relying on California procedural law and irrelevant cases.  *See* Dkt. No. 21 at 15–17.

27

28   ───────────────
     [3] Chase also states that Robert Jr. and Camille are "obviously necessary parties . . . which is
     grounds alone for dismissal."  Dkt. No. 22 at 7, n. 2.  This bald assertion is insufficient.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Nonetheless, the Court is not persuaded by Wells Fargo's arguments.  Rule 19(a)(1)(A) "is

2    concerned only with relief as between the persons *already* parties, not as between a party and the

3    absent person whose joinder is sought."  *Eldredge v. Carpenters 46 N. California Ctys. Joint*

4    *Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (emphasis added)

5    (quotation omitted).  Wells Fargo makes no attempt to explain why the Court cannot accord

6    complete relief between it and Plaintiff—instead focusing on whether any portion of liability it

7    could face should be shared by Robert Jr. and Camille.

8          Wells Fargo's arguments for necessary joinder under the second prong of Rule 19(a)(1) are

9    equally unconvincing.  Joinder under Rule 19(a)(1)(B) "is 'contingent . . . upon an initial

10   requirement that the absent party *claim* a legally protected interest relating to the subject matter of

11   the action.'"  *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999).  Wells Fargo does not

12   assert that Robert Jr. or Camille have claimed an interest in this litigation, and there is no

13   indication that they have.  Because neither absent party has claimed any interest in this case, it is

14   not necessary for the Court to consider whether their absence would leave Wells Fargo subject to

15   incurring double, multiple or otherwise inconsistent obligations.  For these reasons, Wells Fargo's

16   motion to dismiss under Rule 12(b)(7) is **DENIED.**

17        **B.    Rule 12(b)(6) Motion**

18             **i.    California Probate Code Section 4303**

19        Defendants argue that California Probate Code § 4303 immunizes them from each of

20   Plaintiff's claims.

21        Probate Code § 4303 provides, in relevant part:

22        (a) A third person who acts in good faith reliance on a power of attorney is not liable to the
         principal . . . for so acting if all of the following requirements are satisfied:
23

24             (1) The power of attorney is presented to the third person by the attorney-in-fact
             designated in the power of attorney.

25             (2) The power of attorney appears on its face to be valid.

26             (3) The power of attorney includes a notary public's certificate of acknowledgment
             or is signed by two witnesses.
27

28   A power of attorney is "legally sufficient" for purposes of § 4303 immunity if it meets the

9

1    requirements of § 4121.  *See Kaneko v. Yager*, 120 Cal. App. 4th 970, 982 (Cal. Ct. App. 2004).

2    Specifically, the power of attorney must (a) contain the date of its execution, (b) be signed by the

3    principal, or in the principal's name by another adult in the principal's presence and at the

4    principal's direction and (c) be acknowledged before a notary public.  *See* Cal. Prob. Code § 4121.

5         Plaintiff argues that § 4303 does not apply because, as a threshold matter, she has alleged

6    sufficient facts supporting an inference that Defendants acted in bad faith.  Plaintiff alleges that

7    Defendants "operated in bad faith, knowing that it was in their financial interest to allow for the

8    fraudulent actions to occur," or "knowing that" their "actions/inactions would cause substantial

9    harm to Plaintiff."  *See* Compl. at ¶¶ 67, 86.  These barebones assertions are insufficient to plead

10   bad faith.  And Plaintiff does not allege any facts plausibly explaining *how* Defendants knew when

11   the power of attorney was presented Robert Jr. and Camille were committing fraud, as required for

12   the heightened pleading standard for claims sounding in fraud.  *See Cooper v. Pickett*, 137 F.3d

13   616, 627 (9th Cir. 1997).

14        In addition, Plaintiff's own allegations, coupled with the attachment of the power of

15   attorney to her complaint, show that even as pled, § 4303's safe harbor applies.  First, Plaintiff

16   alleges that Robert Jr. and Camille submitted the power of attorney to Defendants, satisfying

17   § 4303(a)(1).  *See* Compl. at ¶ 24.  Plaintiff also alleges that the power of attorney was "facially

18   and obviously fraudulently prepared" and that the "fraudulent nature was apparent for numerous

19   reasons."  *See id*. at ¶ 25.  These conclusory allegations are not sufficient to support her claims,

20   and even if they were, the power of attorney attached to the complaint as Plaintiff's own exhibit

21   contradicts her allegations.  *See* Dkt No. 19-1 at 63–71; *see Khoja*, 899 F.3d at 1002; *see also*

22   *Sprewell*, *supra*, 266 F.3d at 988 (courts "need not . . . accept as true allegations that contradict

23   matters properly subject to judicial notice or by exhibit.").

24        On its face, the exhibit bears all the hallmarks of a facially valid power of attorney.  It

25   contains a signature purporting to be Plaintiff's and the date of execution.  *See* Dkt No. 19-1 at 68.

26   The contents of the document make clear that it is a legal instrument authorizing the attorney-in-

27   fact to take various actions, including the ability to transfer funds, set up a trust account, make

28   deposits or withdrawals, among other things.  *See id.* at 64, 66.  And the power of attorney

United States District Court
Northern District of California

1    includes a forged certification by a notary public that appears valid on the face of the document.

2    *See id.* at 68.  That certification includes the notary public's stamp with the seal of the State of

3    California.  *See id.*  The document thus satisfies the requirements of § 4303(a)(2)–(3).

4        Plaintiff nonetheless alleges that several inconsistencies existed in the power of attorney,

5    pointing out that the signature differed from her standard signature, and that no "wet copy" of the

6    power of attorney was presented.[4]  *See* Compl. at ¶ 25.  Plaintiff argues that the certification by a

7    notary public must be an *actual* (*i.e.*, non-forged) certification to satisfy § 4303(a)(3).  And she

8    also seems to argue that the banks should have investigated the purported inconsistencies in the

9    certification of notary public.  *See* Dkt. No. 21 at 18–19; Dkt. No. 24 at 9–10.  The logical result

10   of Plaintiff's argument is that third parties would have to verify independently that certifications

11   of a notary public were not forged.  But Plaintiff presents no California authority establishing

12   these claimed requirements and duties, or anything suggesting that this was the legislature's intent.

13   The Court finds that Plaintiff's position is untenable and would impose a duty on Defendants that

14   is unsupported by California law.  *See Kurtz-Ahlers v. Bank of America*, 48 Cal. App. 5th 952, 690

15   (Cal. Ct. App. 2020) ("monitoring individual banking transactions to detect fraudulent activity

16   would imperil both customer privacy and the expedited processing of banking transactions so

17   crucial to a modern economy.").  Once presented with the power of attorney, therefore,

18   Defendants were entitled to rely in good faith on its validity.

19       The Court is likewise unpersuaded by Plaintiff's argument that Defendants are not immune

20   under § 4303 because they *also* relied on a forged Certification of Resignation of Trustee.  The

21   power of attorney expressly authorized Robert Jr. not only to open a trust account for his own

22   benefit, but also to fund that account and "perform any act necessary to deposit . . . any note," such

23   as the check representing the life insurance proceeds issued to Plaintiff.  *See* Dkt. No. 19-1 at 63–

24   67.

25   _____

26   [4] As a nonoriginal copy, Plaintiff argues, Defendants could not rely on the power of attorney
     because it did not meet the requirements of Probate Code § 4307 for certified copies of powers of

27   attorney.  But § 4307 itself provides a carveout for good faith reliance on a non-certified copy of a
     power of attorney.  *See* Cal. Probate Code § 4307(d) ("Nothing in this section is intended to create

28   an implication that a third person may be liable for acting in good faith reliance on a copy of a
     power of attorney that has not been certified under this section.").

United States District Court
Northern District of California

1     The Court notes that Plaintiff also alleges harm based on Defendants' actions after she

2     reported the fraud.  Plaintiff alleges that upon discovering her stepson's fraud in December 2021,

3     she notified both Chase and Wells Fargo of the fraudulent power of attorney and transfers that had

4     taken place under that document's guise of authority.  *See* Compl. at ¶ 34–35.  As alleged, she

5     explained to Defendants, on multiple occasions, that she had not signed the power of attorney, and

6     that she had "not authorized any of the transfers, payments taken from the accounts" by Robert Jr.

7     and Camille.  *See id*. ¶ 35.  Defendants "refused to investigate the fraud" or remove Robert Jr.'s or

8     Camille's access to Plaintiff's accounts.  *See id.* at ¶ 36.  Plaintiff alleges that "Robert Jr. and

9     Camille were able to continue withdrawing funds from said accounts," and that the "final unlawful

10    withdrawal" took place from Plaintiff's Wells Fargo account on January 26, 2023.  *See id.*

11    Relying on *Bullis v. Security Pacific National Bank*, 21 Cal. 3d 801, 808 (Cal. 1978), Plaintiff

12    contends that Defendants "owed a duty to act with reasonable care in its transactions with Plaintiff

13    as a depositor at [their] respective institutions."  *See* Compl. at ¶ 104.  Taken together and making

14    all reasonable inferences in favor of Plaintiff, as the Court must at this stage, these allegations

15    suggest that Plaintiff's position is that based on her report, Defendants had a duty to independently

16    investigate the validity of the power of attorney and secure her accounts to prevent any additional

17    unauthorized withdrawals or other transfers.

18         Ultimately, however, the Court finds that no California authority cited by Plaintiff

19    establishes the duty she asserts, which would conflict with § 4303's safe harbor.  The Probate

20    Code clearly delineates banks' duty in this situation: once presented with a qualifying power of

21    attorney, they were bound to follow it, and cannot be sued for doing so.  While the facts here are

22    certainly sympathetic, Plaintiff's suggestion that Defendants should be liable for post-notice

23    conduct is inconsistent with the statute's bright line rule.  The premise of a power of attorney is

24    that the principal is legally no longer able to speak for themselves.  Here, the power of attorney

25    was a durable power of attorney, which continues even after the principal's incapacity.  *See* Cal.

26    Prob. Code § 4124.  It would be strange, therefore, for the Probate Code's safe harbor to be

27    overcome by the (presumptively incompetent) principal saying that a bank should not follow the

28    power of attorney.  And, if a principal wishes to revoke her power of attorney, whether general or

United States District Court
Northern District of California

12

1    durable, she must do so in accordance with the requirements of the Probate Code. *See* Prob. Code

2    § 4153(a).

3        Plaintiff does not allege that she revoked the power of attorney, or that she gave notice to

4    the banks that she did so. To the extent Plaintiff could amend her complaint to plead that she did

5    revoke the power of attorney and notified defendants of that revocation, the Court would have to

6    consider what that would mean for her claims. Because the Court cannot say that amendment

7    would necessarily be futile, it **GRANTS** leave to amend on this basis.[5] And because the Court

8    grants leave to amend with respect to facts that might be relevant to the application of section

9    4303, it also considers each of Plaintiff's claims individually to give guidance and provide limits

10    for any amended complaint.

### ii.    Aiding and Abetting Breach of Fiduciary Duty (Claim One)

12        Under California law, "[t]he elements of a claim for aiding and abetting a breach of

13    fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's

14    actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by

15    defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in

16    causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (Cal.

17    Ct. App. 2014). Here, the parties dispute whether Plaintiff has adequately pled the second and

18    third elements.

### a.    Actual Knowledge.

20        "California courts have long held that liability for aiding and abetting depends on proof the

21    defendant had actual knowledge of the specific primary wrong the defendant substantially

22    assisted." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (Cal. Ct. App. 2005). "A

23

24    _____

[5] The Court also finds that Plaintiff's allegations with respect to each Defendant lack the required
25    specificity with respect to transactions that took place after she notified them of fraud. *Swartz v.
KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (when suing multiple defendants, Rule 9(b)
26    "requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of
the allegations surrounding his alleged participation in the fraud). Although she alleges that
27    Robert Jr. and Camille were able to continue withdrawing money, apart from one alleged
withdrawal on January 26, 2023, from a Wells Fargo account, Plaintiff does not identify any other
28    unauthorized transactions. On the face of the complaint, however, it is unclear whether any
unauthorized transactions were made from Plaintiff's Chase accounts after December 2021.

United States District Court
Northern District of California

defendant can be held liable as a co-tortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort*." *Id.* at 1146 (*citing Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (Cal. Ct. App. 1988)). To adequately plead this prong, Plaintiff must allege facts that Defendants had actual knowledge of the underlying wrong for which she seeks recovery. *Id.* at 1147. In other words, Plaintiff must plead sufficient facts that Defendants had actual knowledge that Robert Jr. had fraudulently stolen the money she seeks to recover here and intended to facilitate that conduct.

California courts have cautioned that "on demurrer, a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." *Id.* at 1152. And although the *Twombly/Iqbal* standard controls the sufficiency of Plaintiff's allegations, "the California courts' recognition of the need to carefully vet this type of claim is illuminating as this Court does its best to predict how the California Supreme Court would assess Plaintiffs' state law aiding and abetting claims." *Chang v. Wells Fargo Bank, N.A.*, No. 19-CV-01973-HSG, 2020 WL 1694360, at *3 (N.D. Cal. Apr. 7, 2020); *see also Evans v. ZB, N.A.*, 779 Fed. Appx. 443, 449 (9th Cir. 2019) (noting that "California courts find 'actual knowledge' present only in 'extreme circumstances,' and have refused to hold banks liable in far more egregious cases" than *Evans*) (Bea, J., dissenting) (*citing Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (Cal. Ct. App. 1998) *and Casey*, 127 Cal. App. 4th at 1145); *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (instructing that "[w]hen interpreting state law . . . a federal court must predict how the highest state court would decide the issue" and that "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts").

In support of the actual knowledge prong, Plaintiff alleges that, when "presented with the forged documents, Defendants knew, or should have known that these documents were submitted in order to commit fraud." *See* Compl. at ¶ 26. And "Defendants knew that Robert Jr. and Camille's conduct constituted a breach of fiduciary duty based on the patently forged documents." *See id.* at ¶ 45. Plaintiff argues that, "taken together," allegations of Robert and Camille's conduct

14

1    in immediately transferring funds, ordering debit cards, and changing the account mailing address

2    is "more than sufficient" to plead that the banks knew of the breach of fiduciary duty. *See* Dkt.

3    No. 21 at 22; Dkt. No. 24 at 12; *see also* Compl. at ¶¶ 27–28, 30–31. In any event, Plaintiff

4    argues, she alleges that she "directly inform[ed] Defendants of the fraud after discovering the true

5    facts of Robert Jr. and Camille's conduct." *See* Compl. at ¶ 45. Plaintiff alleges she notified

6    Defendants that she "did not sign the forged [power of attorney] or give Robert Jr. and Camille

7    authority over her accounts" and "did not authorize the transfers, withdrawals and other

8    payments." *See* Compl. at ¶ 36.

9         Plaintiff's allegations fall short of the required pleading standard. As an initial matter, her

10   allegations are circular. They rely on an assumption that the banks had knowledge that the power

11   of attorney was forged. As discussed *supra*, even as pled there was no plausible reason for the

12   banks to suspect that anything was amiss given the document's facial validity. Additionally, the

13   contractual relationship between bank and depositor "does not involve any implied duty to

14   supervise account activity or "to inquire into the purpose for which the funds are being used."

15   *Chazen*, 61 Cal. App. 4th at 538. Even Plaintiff's alleged notice to Defendants of the fraud is not

16   enough—all it establishes is that Plaintiff reported what she characterized as fraud to the banks.

17   This notice may have put Defendants on alert that "*something* fishy was going on," but it does not

18   establish that Defendants had actual knowledge that Robert Jr. had breached his fiduciary duty by

19   stealing Plaintiff's money. *See Casey*, 127 Cal. App. 4th at 1149. The Court therefore finds that

20   the complaint fails to adequately plead actual knowledge.

21        The Court also finds that Plaintiff's reliance on *Chang v. Wells Fargo Bank* is misplaced.

22   In *Chang*, this Court found that plaintiffs adequately pled defendant Wells Fargo had actual

23   knowledge of Ponzi scheme that defrauded non-depositor plaintiffs. *Chang*, 2020 WL 1694360,

24   at *3–4 (N.D. Cal. Apr. 7, 2020). Plaintiffs alleged that Wells Fargo had a fiduciary relationship

25   with third-party bad actors who orchestrated the scheme. *See id.* at *4. Due to its obligations

26   under the Bank Secrecy Act, plaintiffs alleged that Wells Fargo reviewed the bad actors' accounts,

27   thereby learning they had misused investor funds, commingled the funds, and misused the funds

28   for Ponzi payments. *See id.* Because plaintiffs directly alleged that the bank had actual

knowledge of the Ponzi scheme, the Court's task was to determine whether those claims were plausible. *See id.* In finding that they were, the Court relied on a host of allegations to support their claim that "Wells Fargo actually knew that [the bad actors] was commingling money from investors." *Id.* at *5. Namely, among other things, plaintiffs alleged that Wells Fargo was the only banking institution used by the bad actors, the bank processed all the transactions and reviewed the accounts as part of its due diligence, and it manually processed a "massive number of wires" that "on their face indicated" that they would commingle assets of investors. *See id.* Additionally, plaintiffs plausibly supported their allegations of actual knowledge by alleging that "Wells Fargo deviated from the standard course of business . . . and made available and accepted for use a modified version of its Direct Deposit Authorization Forms to apply to the payment of investment distributions to [the bad actors'] investors." *Id.*

The Court finds that Plaintiff's allegations here fall short of the plausibility standard for actual knowledge. As discussed above, Plaintiff's only allegations that could possibly support knowledge concern her notice to defendants of the alleged fraud. She identifies no obligation of the banks to assist in investigation of the fraud and confirm the alleged theft of her money. Additionally, it is far from self-evident that the alleged post-notice banking transactions could establish intent here, where the banks were not only legally obligated under the facially valid power of attorney to process such transactions, but also had no duty to investigate that document's validity. Thus, Plaintiff's claim for aiding and abetting breach of fiduciary duty is **DISMISSED WITH LEAVE TO AMEND**.

### iii.    Constructive Fraud (Claim Two)

A claim for constructive fraud requires a "fiduciary or confidential relationship." *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 417 (2000). Plaintiff alleges that by placing most of her life savings into accounts with Chase and Wells Fargo, she "entered into a confidential relationship" with Defendants. Compl. at ¶ 52. California courts find a "confidential relationship" may exist "between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." *Vai v. Bank of America Nat'l Trust & Savings Ass'n*, 56 Cal. 2d 329, 337 (1961). As the court observed in *Vai*, confidential

16

1    relationships are particularly likely to exist between family members, such as the relationship

2    between husband and wife.  *Id.* at 337–338.

3            The Court finds that Defendants' relationship with Plaintiff was straightforwardly that of a

4    bank and its depositor.  Plaintiff has not pled facts to suggest that her relationship with Chase or

5    Wells Fargo was anything more than that, and she pleads nothing plausibly supporting her

6    allegation that this was a "confidential relationship."  *See* Compl. at ¶¶ 16, 60, 78, 104.  Under

7    California law, banks "are not fiduciaries for their depositors."  *Copesky v. Superior Ct.*, 229 Cal.

8    App. 3d 678, 694 (Cal. Ct. App. 1991).  Nor is the "bank-depositor relationship" a "special

9    relationship . . . such as to give rise to tort damages when an implied contractual covenant of good

10   faith is broken."  *Id.*  Because as a matter of law no fiduciary or other "special relationship" exists

11   between a bank and its depositor, Plaintiff's claim for constructive fraud is **DISMISSED**

12   **WITHOUT LEAVE TO AMEND**.

13           **iv.    Financial Abuse of an Elder (Claim Three)**

14           Plaintiff alleges that Defendants "assisted" Robert Jr. and Camille in taking funds that

15   rightfully belonged to Plaintiff, in violation of the EADACPA.  As relevant here, § 15610.30(a)

16   states that "financial abuse of an elder" occurs when a person or entity "[a]ssists in taking,

17   secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent

18   adult for a wrongful use or with intent to defraud, or both."  Cal. Welf. & Inst. Code

19   § 15610.30(a)(2).  Courts have interpreted the term "assist" in this context to require that the

20   defendant had "actual knowledge of the underlying wrong it purportedly aided and abetted."  *See,*

21   *e.g., Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744–45 (Cal. Ct. App. 2010) (quotation

22   omitted).

23           Plaintiff argues that *Das* interpreted an earlier version of the statute and that actual

24   knowledge is no longer required to state a claim.  *See* Dkt. No. 21 at 24; Dkt. No. 24 at 15–16.

25   The Court disagrees.  *Das* remains good law, and numerous courts in this circuit have followed

26   that case to hold that actual knowledge is required to state a claim against an entity that allegedly

27   assisted in financial abuse of an elder.  *See Bortz v. JP Morgan Chase Bank, N.A.*, No. 22-CV-

28   55582, 2023 WL 4700640, at *1 (9th Cir. July 24, 2023) (holding that there is not "convincing

17

United States District Court
Northern District of California

1  evidence" that, as the plaintiffs there argued, the California Supreme Court would read subsection

2  (a)(2) to impose "strict liability")[6]; *see also Lin v. JPMorgan Chase*, No. 2:24-CV-01837-JLS-E,

3  2024 WL 5182199, at *3 (C.D. Cal. Aug 15, 2024) (collecting cases).  Nonetheless, as discussed

4  *supra*, Plaintiff has not pleaded sufficient facts to show that Defendants had actual knowledge of

5  the primary wrong.  Thus, like her claim for aiding and abetting a breach of fiduciary duty,

6  Plaintiff's claim under the EADACPA is **DISMISSED WITH LEAVE TO AMEND.**

7       **v.    Violations of California's Unfair Competition Law (Claim Four)**

8       Plaintiff also alleges that Defendants' conduct violated the UCL.  *See* Compl. at ¶¶ 71–76.

9  Chase and Wells Fargo argue that Plaintiff is not entitled to equitable relief under the UCL.  *See*

10  Dkt. No. 20 at 28–29; Dkt. No. 22 at 15–16.

11       "The UCL limits the remedies available for UCL violations to restitution and injunctive

12  relief . . . ."  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (Cal. Ct. App. 2005).

13  Plaintiff's prayer for relief seeks restitution.  *See* Compl. at 28.  Restitution requires Plaintiff to

14  show: (1) "that she had at one time an ownership interest in the money . . . lost" and (2) that

15  money or property must have been acquired" by the defendants.  *Kanji v. Bank of America*, No.

16  20-CV-03820-RSWL, 2020 WL 8175548 *7 (N.D. Cal. 2020).  Plaintiff attempts to distinguish

17  *Kanji* as inapposite because it delt with online fraud.  *See* Dkt. No. 24 at 17–18.  This distinction

18  makes no difference, and *Kanji* is not binding on this Court in any event.  Plaintiff has not alleged

19  that either bank "acquired" the money deposited in the banks.  Instead, as Plaintiff alleges, it was

20  her stepson Robert Jr. and his wife Camille who took "hundreds of thousands of dollars from" her.

21  *See* Compl. at ¶ 38.  Plaintiff's claim for violations of the UCL is **DISMISSED WITH LEAVE**

22  **TO AMEND**.

23       **vi.    Breach of Contract (Claim Five)**

24       Under California law, a claim for breach of contract consists of four elements: (1) a

25  contract, (2) the plaintiff's performance or excuse for non-performance, (3) defendant's breach,

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [6] As an unpublished Ninth Circuit decision, *Bortz* and any other nonpublished Ninth Circuit cases cited in this order may be considered for their persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

1    and (4) damages to the plaintiff from defendant's breach.  *See Walsh v. W. Valley Mission Cmty.*

2    *Coll. Dist.,* 66 Cal. App. 4th 1532, 1545 (Cal. Ct. App. 1998).  Under California law, a contract

3    requires both offer and acceptance: "[a]n offer must clearly articulate the terms of the agreement

4    and the acceptance must be absolute, unqualified and a mirror image of the offer."  *Chaganti v. I2*

5    *Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) (citing *Panagotacos v. Bank of*

6    *America,* 60 Cal.App.4th 851, 855 (Cal. Ct. App. 1998)).

7         Plaintiff's form pleadings allege only the bare bones of these elements.  According to

8    Plaintiff, she "entered into a written contract" with Chase and Wells Fargo when she originally

9    opened accounts and deposited money with each of them, that she performed her allegations under

10    the contract, Defendants breached, and she has suffered damages.  Compl. at ¶¶ 78–81.  Plaintiff

11    does not allege specific contractual terms with any particularity, and she has not attached the

12    alleged contract as an exhibit to the complaint.  Her fifth cause of action for breach of contract is

13    therefore **DISMISSED WITH LEAVE TO AMEND**.

14         **vii.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim Six)**

15         In a similar vein, a claim for breach of the implied covenant of good faith and fair dealing

16    requires Plaintiff to "first plead that there was a contract between it and the defendant."

17    *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 606 (N.D. Cal. 2022).  "Second, the plaintiff must

18    allege that the defendant acted in a way that deprived the plaintiff of benefits conferred by that

19    contract."  *Id.* at 607.  As already noted, Plaintiff has not made anything other than cursory

20    allegations that she entered a contract when she opened accounts with Defendants.  Without

21    alleging specific contractual terms, or attaching the contract itself to the complaint, Plaintiff's

22    claim fails.  Even if Plaintiff could allege such terms, however, her claim is not viable because is

23    the "bank-depositor relationship" is not a "special relationship . . . such as to give rise to tort

24    damages when an implied contractual covenant of good faith is broken."  *Copesky*, 229 Cal. App.

25    3d at 694.  Plaintiff's sixth cause of action for breach of the implied covenant of good faith and

26    fair dealing is therefore **DISMISSED WITHOUT LEAVE TO AMEND**.

27         **viii.    Conversion (Claim Seven)**

28         Plaintiff's conversion claim also fails as a matter of law.  "Conversion is the wrongful

United States District Court
Northern District of California

19

exercise of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (Cal. 2015). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.*

"California law is well-settled in this area that a claim against the bank for conversion will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor has no conversion claim against a bank under California law." *Chavez v. Bank of America Corp.*, No. C–10–0653-JCS, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012); *see also Gutierrez v. Wells Fargo Bank N.A.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) ("A bank may not be sued for conversion of funds deposited with the bank."). Title to Plaintiff's money passed immediately to Chase and Wells Fargo once she had made deposits with them. As in *Chavez*, Plaintiff no longer held title to the money; rather, she held a contractual right to demand those funds from the bank. *Chavez*, 2012 WL 1594272, at *11. Plaintiff's conversion claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### ix.    Aiding and Abetting Conversion (Claim Eight)

To state a claim for aiding and abetting conversion, Plaintiff must allege that Defendants "had actual knowledge of the specific primary wrong; and substantially assisted." *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D. Cal. 2020) (citations omitted). To support her claim for aiding and abetting conversion, Plaintiff states that: "[w]hen Defendants were presented with the forged documents, Defendants knew, or should have known, that Defendants [sic] intended to commit wrongful acts and convert the property rightfully belonging to Plaintiff." *See* Compl. at ¶ 97. Plaintiff further alleges that "by failing to respond and take corrective action once Plaintiff had notified Defendants directly of the ongoing fraud, Defendants provided further assistance to Robert Jr. and Camille in achieving the fraud against Plaintiff." *See id.* at ¶ 99.

For the reasons stated above, Plaintiff's allegations fall short of the actual knowledge requirement. Her claim for aiding and abetting conversion is therefore **DISMISSED WITH LEAVE TO AMEND.**

x.    **Negligence (Claim Nine)**

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (Cal. Ct. App. 2013). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991). Rather, "banks are not fiduciaries for their depositors," and instead their relationship is "founded on contract." *See Chazen* 61 Cal. App. 4th at 537 (quotation omitted).

Defendants argue that Plaintiff's claim for negligence is barred by (1) the doctrine of economic loss and (2) the statute of limitations. *See* Dkt. No. 20 at 31; Dkt. No. 22 at 18–19. Plaintiff's opposition concedes that her relationship with the banks was grounded in contract and that breaches are generally resolved through contract law. Dkt. No. 24 at 21. Nonetheless, relying on *Erlich v. Menezes*, 21 Cal. 4th 543 (Cal. 1999), she argues that the Court should impose tort remedies because the breach "violate[s] a social policy that merits the imposition of tort remedies." Dkt. No. 24 at 27. She asserts that "California has long recognized a duty on the part of banks to its depositors, and allowed actions in negligence to proceed under such theories." *Id.* Plaintiff cites only two cases that could possibly support her position: *Bullis v. v. Security Pac. Nat. Bank*, 21 Cal. 3d 801 (Cal. 1978) and *Sun 'n Sand v. United California Bank*, 21 Cal. 3d 671 (Cal. 1978). But neither case supports Plaintiff's proposed rule.

As an initial matter, both *Bullis* and *Sun 'n Sand* narrowly focused on a bank's obligations in honoring checks. In *Bullis* a decedent's daughter and long-time financial advisor were named co-executors of the decedent's estate. *Bullis*, 21 Cal. 801 at 805–06. The financial advisor opened the account after he presented a certified copy of letters appointing both him and decedent's daughter as co-executors. *See id.* at 806. The bank's actions ran counter to its own operations manual, which specifically required that if there were two executors for an estate, both executors' signatures were ordinarily required for withdrawal. *See id.* The bank's operating procedures required such accounts to be manually "flagged" for such a requirement. *Id.* If an estate did not

1    require two signatures for withdrawals, the bank's legal team would be consulted. *Id.* Despite

2    these protocols, the decedent's estate was not properly marked and the financial advisor was able

3    to withdraw hundreds of thousands of dollars from the estate with checks he alone had signed. *Id.*

4    at 807. The California Supreme Court found that the bank's duty to exercise reasonable care in

5    these circumstances—that is, in requirements for authorizing and honoring checks signed solely

6    by a co-executor—had been established by the banking industry's custom and practice. *Id.* at 811.

7    The decision did not establish general duty of care owed by banks to customers outside that

8    context.

9         *Sun 'n Sand*, meanwhile, involved the duty of a bank to a non-depositor. In *Sun 'n Sand*,

10   plaintiff's employee manipulated company checks to embezzle funds. *See Sun 'n Sand*, 21 Cal. 3d

11   at 678–79. After obtaining authorized signatures from a company officer for several checks in

12   nominal amounts payable to the defendant bank, the employee altered the checks by increasing

13   their amounts. *Id.* He presented the checks to the defendant bank to deposit them in his personal

14   account, which the bank did, even though the defendant bank was listed as the payee. *Id.* The

15   plaintiff company brought a claim for negligence, arguing the bank breached its duty of care in

16   depositing the checks.

17        The California Supreme Court found that such a duty existed, although the duty was

18   "narrowly circumscribed." *Sun 'n Sand, Inc.*, 21 Cal. 3d at 695. "[I]t is activated only when

19   checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to

20   the payee bank by a third party seeking to negotiate the checks for his own benefit." *Id.*

21   California courts have preserved this narrow holding. *See Chazen, supra*, 61 Cal. App. 4th at 545

22   (*Sun 'n Sand* and its progeny each involved "the bank's liability for allowing a person to deposit a

23   check, payable to someone else, into a personal account, under circumstances that should have

24   alerted the bank to the possibility of fraud. It is not clear whether [these cases] can be applied to

25   other factual circumstances.").

26        Absent controlling precedent that Defendants owed a duty of care to Plaintiff beyond their

27   contractual relationship, Plaintiff's negligence claim is barred by the economic loss rule.

28   "Fundamentally, purely economic losses flowing from a financial transaction gone awry . . . are

1   primarily the domain of contract and warranty law or the law of fraud, rather than of negligence."

2   *S. Cal. Gas Leak Cases*, 7 Cal.5th 391, 402 (Cal. 2019).  Plaintiff's negligence claim is therefore

3   **DISMISSED WITHOUT LEAVE TO AMEND**.

4           **xi.     Unauthorized Payment Order (Claim Ten).**

5           Finally, Plaintiff brings a tenth claim under California Commercial Code § 1104 for an

6   unauthorized payment order.  Section 11204 states, in relevant part:

7               "If a receiving bank accepts a payment order issued in the name of its
               customer as sender which is (i) not authorized and not effective as the
8               order of the customer under Section 11202, or (ii) not enforceable, in
               whole or in part, against the customer under Section 11203, the bank
9               shall refund any payment of the payment order received from the
               customer to the extent the bank is not entitled to enforce payment and
10              shall pay interest on the refundable amount calculated from the date
               the bank received payment to the date of the refund."
11

12  "'Payment order' means an instruction of a sender to a receiving bank, transmitted orally or in a

13  record, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a

14  beneficiary . . . .  Cal. Com. Code § 11103(a)(1).  In other words, § 1102 applies to transactions

15  commonly understood as wire transfers.

16          Bank customers are responsible for payment orders that they authorize.  Cal. Com. Code

17  § 11202(a).  But payment orders are "effective as an order of the customer, whether or not

18  authorized," under two conditions: (1) "the security procedure is a commercially reasonable

19  method of providing security against unauthorized payment orders, and (ii) the bank proves that it

20  accepted the payment order in good faith and in compliance with the bank's obligations under the

21  security procedure and any agreement or instruction of the customer . . . ."  Cal. Com. Code

22  § 11202(b).

23          The parties disagree about whether the complaint sufficiently alleges that Defendants

24  processed wire transfers made from her accounts as part of Robert Jr.'s fraudulent scheme.  *See*

25  Dkt No. 25 at 12.  Even if Plaintiff did sufficiently allege the wire transfers at issue, the Court

26  finds that complaint does not include sufficient allegations, let alone any allegations, concerning

27  whether the security measures employed at Wells Fargo or Chase were commercially

28  unreasonable, as is required by § 11202(b).  *See Chen v. JPMorgan Chase Bank, N.A.*, 745 F.

Supp. 3d 1025, 1032–33 (C.D. Cal. 2024) ("Simply stating that the "payment orders received by Defendants were not authorized by Plaintiffs" is not sufficient to show that Defendants failed to employ commercially reasonable security measures vis-à-vis these transactions). For these reasons, Plaintiff's tenth cause of action is dismissed with leave to amend.

## V.     CONCLUSION

For the reasons set forth above, the Court **GRANTS WITH LEAVE TO AMEND** Defendants' motions to dismiss, Dkt. Nos. 20, 22. Plaintiff may file an amended complaint within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated:    9/30/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

24